**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00749-STV

RUTH FAY GRASS,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff Ruth Fay Grass's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq.*, and 1381-83c, respectively. [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [#23] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has carefully

_____

[1] Carolyn Colvin, in her capacity as Acting Commissioner of Social Security, is named as the Defendant in the Complaint. [#1] Nancy A. Berryhill currently serves as the Acting Commissioner of Social Security. [#29 at 1 n.1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, as Commissioner Colvin's successor, "is automatically substituted as a party." *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

considered the Complaint [#1], the Social Security Administrative Record [#18, 20, 26, 27], the parties' briefing [#28, 29, 30], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## I. LEGAL STANDARD

### A. Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled."  *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).  The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017).  The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy.  *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084.  "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

**B.   Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)).   "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084).   "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).   The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).   The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.    BACKGROUND

Plaintiff was born in 1962.  [AR 270, 1058, 1074][4]  Plaintiff completed two years of college education and obtained an associate's degree in business administration.  [AR 350, 1074]  Plaintiff can communicate in English.  [AR 348, 1074-77, 1082-92, 1097-1105]  On or about February 8, 2013, Plaintiff completed a Title II application for DIB [AR 270-73] and, on or about March 18, 2013, Plaintiff completed a Title XVI application for SSI [AR 1058-63].  Plaintiff originally claimed a disability onset date of July 1, 2011 [AR 270, 1058], but subsequently amended that date to November 20, 2012 [AR 297].  [*See also* AR 1072]  Thus Plaintiff was 50 years old at the time of the amended alleged onset date. [*Id.*]  Plaintiff claims disability based upon the following physical impairments: chronic abdominal pain, knee problems resulting in knee replacements, arthritis, carpal tunnel, degenerative changes to the lumbar spine, shoulder pain, and obesity.  [AR 29, 349, 1082, 1102]  With the exception of 2001 when Plaintiff was caring for her mother, Plaintiff worked full time between 1999 and 2011 in a variety of office positions, handling procurement bookkeeping, reception, and customer service.  [AR 351, 1075-77]  Plaintiff also worked as a car detailer and salesperson during this time.  [AR 1077]  In 2012, Plaintiff worked at a feed lot, but was let go after approximately three weeks because the employer said she "couldn't handle the job."  [*Id.*]

---

[4] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.  [#18, 20, 26, 27]

A. **Medical Background**

1. *Abdominal Pain*

Plaintiff has chronic abdominal pain dating back to at least 1998. [*See, e.g.*, AR 465-66, 473, 527, 579, 608, 738, 766] A medical record from September 28, 2010 (approximately two years prior to the alleged onset date) reflects that Plaintiff reported recurrent abdominal pain that required her to manually manipulate her abdominal wall to affect gut motility. [AR 579] The record notes that Plaintiff has "a long history of abdominal wall hernias" and had undergone multiple surgeries, including a cesarean section, an appendectomy, umbilical hernia repair, total abdominal hysterectomy with bilaterally salpingo oophorectomy, cholecystectomy, incisional hernia repairs, and panniculectomy. [*Id.*] In December 2010, Plaintiff had another surgery to remove a ventral hernia. [AR 647]

At a December 2012 medical appointment, Plaintiff reported that she continued to have "deep and constant pain" in her abdomen and reported her pain level as a five out of 10. [AR 665] Plaintiff reported that she had undergone 17 abdominal surgeries in the past. [*Id.*] An examination of her abdomen revealed that it was normal in appearance and negative for tenderness. [AR 667] Plaintiff's prescription for Tramadol, which she had been taking for over a year for her abdominal pain, was renewed. [*Id.*]

Plaintiff saw her doctor for abdominal pain on June 3, 2013 and a CT of her abdomen was ordered. [AR 743-44] The CT did not reveal any abnormal masses, fluid collection, adenopathy, inflammatory process, or free air. [AR 747] At an October 21, 2013 medical visit, Plaintiff reported that she continued to experience abdominal pain, which she described as "unbearable" without the use of tramadol. [AR 772] At a

November 14, 2013 appointment, Plaintiff informed the medical provider that she manually manipulates her abdomen a few times each day to decrease pain, which she stated had nothing to do with bowel movements. [AR 783] The doctor assured her that she could not harm herself by doing this and stated that he would be willing to provide a note to an employer stating that it was related to her medical condition. [AR 783-84] On November 23 ,2013, Plaintiff's doctor provided her a note stating that Plaintiff "has a medical condition that requires her to have a break every hour for 5 to 10 minutes while she is working." [AR 796]

On January 16, 2014, Plaintiff was seen for abdominal pain and burning and reported that she had more persistent pain than usual in the prior week. [AR 797] Upon examination, the doctor found no evidence of a new hernia but noted that Plaintiff was tender in the epigastrium to the left upper quadrant and determined that the issue was likely peptic in nature. [*Id.*] On April 30, 2014, Plaintiff reported worsening abdominal pain in her left lower quadrant and mid lower quadrant, which is improved somewhat through manual manipulation. [AR 815] At a July 11, 2014 appointment, Plaintiff reported that her abdomen pain was doing better and an exam did not reflect any tenderness or any palpated abdominal masses. [AR 857, 860]

On September 5, 2014, Plaintiff went to the emergency room for abdominal pain, informing the medical provider that she was having significant pain in the left upper quadrant and that manipulation of her stomach was not reducing the pain as it usually did. [AR 866] Plaintiff reported her pain as a seven out of 10. [AR 867] At a follow-up on September 26, 2014, Plaintiff reported that her abdominal pain was so severe that she

is overwhelmed by it and that it was preventing her from sleeping. [AR 879] Plaintiff was prescribed a gastrointestinal cocktail to supplement the tramedol. [AR 882]

On January 12, 2015, Plaintiff reported severe abdominal pain that prevented her from sleeping two nights in a row, but the doctor "c[ould] not see where her pain has clearly changed." [AR 952] On February 9, 2015, Plaintiff reported continued abdominal pain, but it responded well to medication. [AR 971, 974] On March 25, 2015, Plaintiff again reported intense abdominal pain that prevented her from sleeping approximately four nights per week. [AR 983] On April 27, 2015, Plaintiff reported that her bloating issues were doing better though she still had pain from time to time. [AR 992] On July 10, 2015, Plaintiff reported that she was still having a lot of trouble with abdominal pain and regularly took tramadol. [AR 997] On August 25, 2015, Plaintiff visited the emergency room complaining of abdominal pain. [AR 915] Plaintiff reported constant piercing and burning pain, which she rated as a seven out of 10. [*Id.*] A May 16, 2016 abdominal CT scan was "essentially normal," with no indication of obstruction or hernias. [AR 1039] The doctor did not believe further surgery would be likely to alleviate the pain Plaintiff was experiencing and expressed frustration that they could not figure out what was causing Plaintiff's pain. [*Id.*]

### 2. Shoulder Pain

Plaintiff's records also reflect that Plaintiff has suffered from shoulder pain. At a medical appointment in September 2010, Plaintiff reported that she had been experiencing right should pain for several months. [AR 578] An MRI revealed significant AC arthrosis, resulting in significant impingement. [*Id.*] On November 5, 2010, Plaintiff had surgery on her right shoulder to treat the impingement. [AR 650-51]

At an October 21, 2013 medical visit, Plaintiff reported that she had been experiencing left shoulder pain for approximately one week.  [AR 772]  Upon examination, the doctor found limited range of motion and mildly positive signs of impingement.  [AR 773]  On November 4, 2013, Plaintiff was determined to have mild degenerative changes and impingement in her left shoulder and was given a steroid injection.  [AR 777, 778]  At a follow-up appointment on November 20, 2013, Plaintiff reported that the injection was working well, with improved range of motion and pain level.  [AR 786]

On January 28, 2014, Plaintiff reported that her left shoulder pain was not improving with physical therapy and that her pain was worse with overhead movement and during her sleep at night.  [AR 800]  An MRI on February 6, 2014 reflected moderate joint effusion, a partial undersurface tear of the supraspinatus tendon, and mild osteoarthritis resulting in mild impingement.  [AR 803-04]

### 3.  *Knee Pain*

Plaintiff also has suffered from knee pain.  On January 18, 2010, Plaintiff was evaluated for left knee pain and was determined to have left knee medial joint degenerative joint disease, joint space narrowing, and sclerosis consistent with osteoarthritis with the possibility of a degenerative meniscal tear.  [AR 580]  On November 8, 2012, Plaintiff went to the emergency room for right knee pain.  [AR 669]  At a medical appointment on November 28, 2012, Plaintiff reported pain in both her left and right knees and was using a cane for ambulation.  [*Id.*]

On January 29, 2013, Plaintiff had arthroscopy on her right knee with no complications.  [AR 728]  At a follow-up examination on March 25, 2013, Plaintiff reported having pain in both knees and, upon examination, had moderate pain and decreased

range of motion in both knees.  [AR 710-11]  Plaintiff was given steroid injections in both knees and the doctor discussed the possibility of total knee arthroplasty in the future.  [AR 712]

On April 30, 2013, Plaintiff was admitted to the hospital for a right total knee arthroplasty.  [AR 764] The surgery was uneventful and Plaintiff was noted to be doing "very well" following surgery.  [*Id.*]  Plaintiff was discharged from the hospital three days after the surgery.  [*Id.*]  On June 12, 2013, Plaintiff had a follow-up appointment for her right knee surgery.  [AR 695]  Plaintiff reported zero out of 10 on the pain scale and that she was ambulatory.  [*Id.*]  Examination of the right knee revealed normal range of motion and strength.  [AR 696]

On July 16, 2013, Plaintiff was admitted to the hospital for a left total knee arthroplasty.  [AR 765] The surgery was uneventful and Plaintiff was noted to be doing "very well" following surgery.  [*Id.*]  Plaintiff was discharged from the hospital three days after the surgery.  [*Id.*]  On August 14, 2013, Plaintiff had a follow-up appointment for her left knee surgery.  [AR 685]  Plaintiff continued to use a cane and reported swelling and a pain level of six out of 10.  [AR 685-86]  Examination of the left knee revealed "minimal" pain, normal knee stability, decreased flexion, and normal extension.  [AR 686]  At a medical appointment on November 4, 2013, Plaintiff reported that her right knee had recovered well, but that her left knee was recovering more slowly and she believed it may be hyperextending slightly.  [AR 775]

At a February 9, 2015 medical appointment, Plaintiff complained of pain in both knees, especially when climbing stairs.  [AR 971]   On September 23, 2015, Plaintiff

reported knee pain at a level of eight out of 10 at its worst, and never below a five out of ten.  [AR 1016]

### 4.  Back Pain

Plaintiff's medical records also reflect that Plaintiff has experienced back pain.  At a well woman exam on March 1, 2010, Plaintiff reported that she has "a little bit of chronic back pain," which she believed to be attributable to her weight and breast size.  [AR 581] At a medical appointment on November 20, 2013, Plaintiff reported pain in her lower thoracic spine and hip pain.  [AR 786]  Lumbar spine x-rays taken on November 21, 2013 reflected multilevel degenerative changes and chronic-appearing T12 anterior wedge compression fracture.  [AR 791]  A June 30, 2014 MRI reflected mild to moderate degenerative disc disease and facet osteoarthritis.  [AR 844]  On July 30, 2014, Plaintiff reported more severe back pain, which she described as shooting and sharp and 10 out of 10 on the pain scale when it comes.  [AR 863]  An August 15, 2014 MRI of the thoracic spine revealed only minimal multilevel thoracic spondylosis without significant spinal canal or foraminal stenosis and gallstones.  [AR 865]

On December 30, 2014, Plaintiff reported worsening lower back pain and spasms. [AR 936]  On January 20, 2015, Plaintiff received lumbar facet injections and experienced great improvement.  [AR 1042, 1043]  On April 27, 2015, Plaintiff reported improvement in her lower back pain.  [AR 992]  On November 12, 2015, Plaintiff had bilateral breast reduction surgery.  [AR 892]

### 5.  Carpal Tunnel

On April 15, 2013, Plaintiff was evaluated for pain in her hands.  [AR 705]  Plaintiff reported "sharp, stabbing, aching, burning pain with clicking" and continuous stiffness of

her left thumb.  [AR 706]  Plaintiff stated that she had experienced pain in her hands for approximately two years.  [*Id.*]  Plaintiff reported that the pain was worse after repetitive actions and interfered with her crocheting and crafts, but improved with pain medication and rest.  [*Id.*]  Upon examination of her hands, Plaintiff was in severe pain and had limited hand and finger range of motion in her right hand.  [*Id.*]  Radiology of her hands did not reveal any fracture, dislocation, or degenerative joint disease.  [AR 707]  The doctor assessed Plaintiff with DeQuervain's tenosynovitis in the right hand and gave her a steroid injection and brace for the right hand.  [AR 708]

At a medical appointment on November 4, 2013, Plaintiff reported bilateral hand pain while driving and at night and reported that her left fingertips tingled.  [AR 775]  It was noted that Plaintiff was using her right hand to hold her cane and was not wearing a brace.  [*Id.*]  On November 20, 2013, Plaintiff reported tingling in her left index and middle fingers and was assessed with carpal tunnel syndrome and prescribed a left wrist splint.  [AR 786, 788]

On April 8, 2014, Plaintiff reported right wrist pain, but denied numbness or tingling in her fingers.  [AR 812]  Plaintiff acknowledged that she was not wearing her brace as much as she should and noted that she had been doing more crocheting to earn income, which had aggravated the pain.  [*Id.*]  Plaintiff was given a steroid injection in the right wrist.  [AR 814]  At a medical appointment on September 26, 2014, Plaintiff reported that her carpal tunnel symptoms were better with the use of splints.  [AR 879]

On September 23, 2015, Plaintiff saw a specialist for evaluation of bilateral arm hand pain, primarily in the right arm.  [AR 1013]  Plaintiff received a steroid injection into her left thumb and was assessed with multiple tendinitis and probable carpal tunnel

syndrome. [AR 1014] On March 16, 2016, Plaintiff was seen for pain in both hands with the pain worse in the right hand. [AR 1041] On April 19, 2016, Plaintiff had surgery on her right hand for carpel tunnel syndrome. [AR 1032] At a follow-up appointment on May 20, 2016, Plaintiff reported that she was pleased with the surgery and that she was no longer having nighttime pain. [AR 1035] Plaintiff had full range of motion in her fingers and mild sensitivity, but it was noted that Plaintiff was having pain in her left hand. [*Id.*]

### 6. Obesity

At the time of her application, Plaintiff reported that she was five feet, five inches tall and weighed 250 pounds. [AR 349] Although Plaintiff's medical records make references to her attempts to lose weight, exercise has been difficult due to Plaintiff's abdominal pain and Plaintiff has remained obese throughout the relevant period. [*See, e.g.*, AR 430, 487, 549, 743, 815, 979]

### B. Procedural History

Plaintiff's applications for DIB and SSI were initially denied on April 30, 2013. [AR 36-45, 46-55] Plaintiff's application for DIB was subsequently reconsidered and was again denied on October 17, 2013. [AR 59-71] On October 30, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR 160] An initial hearing was conducted before ALJ Kathryn Burgchardt on October 2, 2014, at which Plaintiff and vocational expert ("VE") Van Iderstein both testified. [AR 1070-93] Plaintiff was represented by attorney James P. Guthro. [*Id.*; *see also* AR 403-06]

On December 18, 2014, the ALJ issued a decision denying Plaintiff benefits. [AR 1120-33] On December 23, 2014, the ALJ issued an amended decision, which "d[id] not change the contents of the decision in any way" but rather "simply ensure[d] that [Plaintiff]

receive[d] the correct exhibit list." [AR 128-39] Plaintiff requested a review of that decision by the Appeals Council [AR 186], and Plaintiff's attorney submitted a brief in support of the request for review [AR 403-06]. On July 13, 2015, the Appeals Council issued an order remanding Plaintiff's case to the ALJ. [AR 140-43]

On remand, ALJ Burgchardt conducted a second hearing on June 8, 2016, at which Plaintiff and VE Bonnie Sue Martindale both testified. [AR 1094-1115] Plaintiff was again represented by attorney Guthro. [*Id.*] On July 27, 2016, the ALJ issued a decision denying Plaintiff benefits. [AR 23-35] Plaintiff requested a review of that decision by the Appeals Council [AR 21], and Plaintiff's attorney submitted a brief in support of the request for review [AR 1116-17]. On January 26, 2017, the Appeals Council denied Plaintiff's request for review. [AR 15-18]

Plaintiff then filed an appeal with this Court on March 24, 2017.[5] [#1] Because the Appeals Council denied Plaintiff's appeal, the ALJ's July 27, 2016 decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

### C.     The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB and SSI after evaluating the evidence pursuant to the five-step sequential evaluation process. [AR 26-35] At step

---

[5] On August 23, 2017, Defendant moved the Court for an order remanding the case back to the Commissioner for further administrative action, because some of the administrative record could not be located. [#15] The Court granted the motion and remanded the case. [#16] Almost a year later, on July 23, 2018, Defendant moved the Court to reopen the case, because the Appeals Council located the paper folder associated with the case and could "prepare[ ] a complete copy of the administrative record." [#17] A copy of the Administrative Record was filed contemporaneously with the motion to reopen. [#18] The Court granted the motion and reopened the case. [#19] Defendant subsequently filed three supplements to the Administrative Record. [*See* #20, 26, 27]

one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 20, 2012, the amended alleged onset date. [AR 29] At step two, the ALJ found that Plaintiff had the following severe impairments: "(1) Obesity; (2) Degenerative changes of the lumbar spine; (3) Status post-bilateral knee replacements; (4) Degenerative changes of the left shoulder; (5) Abdominal pain, status post multiple abdominal surgeries; (6)[ ] Dequervain's tenosynovitis of the right wrist[;] and (7) bilateral carpal tunnel syndrome." [*Id.*] At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the appendix of the regulations. [*Id.*]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), but with the following limitations:

> [Plaintiff] can lift and carry less than 10 pounds frequently and up to 10 pounds occasionally; can stand and/or walk with normal breaks for two hours in an eight-hour workday; can sit with normal breaks for six hours in an eight-hour workday; can perform pushing and pulling with the upper and lower extremities within the aforementioned weight limitations; can occasionally climb, balance, stoop, crouch, kneel and crawl; can occasionally climb[ ] ladders, ropes or scaffolds, and can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, but fine manipulation bilaterally is limited to frequently.

[*Id.* at 30] The ALJ provided a narrative setting forth the evidence and medical opinions considered in determining the RFC. [AR 30-34]

At step four, the ALJ found that Plaintiff could perform past relevant work as an office manager, bookkeeper, and receptionist as generally performed in the national

economy.[6]  [AR 34]  Accordingly, the ALJ determined that Plaintiff was not under a disability from July 1, 2011 (the originally claimed onset date) through July 27, 2016 (the date of the ALJ's decision).  [AR 34-35]

## III.  ANALYSIS

Plaintiff raises two challenges to the ALJ's decision on appeal.  First, Plaintiff contends that the ALJ violated Plaintiff's procedural due process rights by relying on a medical opinion that was not part of the record until this appeal.  [#28 at 39-41]  Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  [*Id.* at 41-46]  Because the Court agrees that Plaintiff's procedural due process rights were violated based upon the ALJ's reliance on a medical opinion that was not part of the record at the time of the June 8, 2016 hearing, and that such violation requires reversal and remand, the Court does not reach Plaintiff's alternative argument.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (declining to "reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of [the] case on remand").

### A.  The Procedural Due Process Violation

The ALJ supported her determination that Plaintiff was not disabled, in part, by giving "significant weight" to the medical opinion of a state agency physician.  [AR 34]  As the ALJ explained,

---

[6] At step four, a claimant will be determined to be "not disabled" when it is determined that the claimant retains the RFC to perform either (1) the actual functional demands and job duties of a particular past relevant job as performed by the claimant; or (2) the functional demands and job duties of that job as generally required by employers throughout the national economy.  *See* Social Security Ruling 82-61, 1982 WL 31387 (1982); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

On October 15, 2013, State agency physician DMB, M.D. reviewed the file and opined that the claimant could perform light work with occasional postural activities. Exh. 6A, pp. 10, 11 [AR 68-69]. This opinion is given significant weight. It was rendered after a thorough review of the record, and is consistent with the record as a whole. Furthermore, State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [SSA]. SSR 96-6p. However, as this assessment was performed several years ago, the undersigned finds that the above reduced sedentary exertional level is more appropriate based upon the evidence as a whole.

[*Id.*]

On appeal, Plaintiff contends that the ALJ's reliance on the medical opinion of state agency physician DMB (the "DMB Opinion")—located in Exhibit 6A of the Administrative Record [AR 59-71][7]—violated her right to procedural due process, because Exhibit 6A "was never admitted into the record at [the June 8, 2016] hearing" and "Plaintiff never had access to" Exhibit 6A. [#28 at 39, 40] Plaintiff argues that this violated her procedural due process rights, because it denied her the opportunity at the June 8, 2016 hearing to cross-examine the physician or to rebut the DMB Opinion. [*Id.* at 40]

"Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005). Pursuant to the SSA, "the Commissioner shall give [the] applicant . . . reasonable notice and opportunity for a hearing with respect to [the Commissioner's disability] decision, and, if a hearing is held, shall, *on the basis of evidence adduced at the hearing*, affirm, modify, or reverse the Commissioner's findings of fact and such decision." 42 U.S.C. § 405(b)(1) (emphasis added); *see also* 42 U.S.C. § 1383(c)(1)(A). The regulations further provide that "[t]he

---

[7] Exhibit 6A consists of the Disability Determination Explanation for the Commissioner's denial of Plaintiff's DIB claim at "the Reconsideration level," prior to Plaintiff's first hearing before the ALJ. [AR 59]

administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. §§ 404.953(a), 416.1453(a). The Tenth Circuit has made clear, however, that due process requires that "[i]f the ALJ's decision is based on evidence 'otherwise included in the record,' the regulation must be construed to require that this evidence be gathered and presented to the claimant prior to the hearing." *Allison v. Heckler*, 711 F.2d 145, 147 n.2 (10th Cir. 1983).

### 1. *Whether Plaintiff Had Notice of the DMB Opinion in Advance of the June 8, 2016 Hearing*

In response to Plaintiff's procedural due process argument, Defendant first challenges the factual predicate for the argument. [#29 at 12-13] Although Defendant concedes that "[a]t the time the 2014 ALJ hearing notice was issued, the exhibit list that was sent to Plaintiff included only Exhibits 1A and 2A, while [the DMB Opinion] is [Exhibit] 6A" [*id.* at 12 (citing AR 1134, 1144)], Defendant contends that "between the [2014] hearing notice and the ALJ's 2014 hearing decision, Exhibit 6A was added to the exhibit list" [*id.* (citing AR 1120, 1132)]. Defendant thus concludes that the DMB Opinion "was added to the record prior to the [June 8, 2016] administrative hearing and prior to the [2016] ALJ decision." [*Id.*]

Although initially compelling, a closer review of the Administrative Record reveals a fundamental error in Defendant's argument. Defendant's contention that Exhibit 6A was added to the exhibit list "between the [2014] hearing notice and the ALJ's 2014 hearing decision" relies exclusively upon the exhibit list that was attached to the ALJ's Notice of Decision, dated December 18, 2014. [AR 1120-33] On December 23, 2014, however, the ALJ issued an Amended Notice of Decision, which explicitly stated that it

18

"d[id] not change the contents of the decision in any way" but rather "simply ensure[d] that [Plaintiff] receive[d] the correct exhibit list." [AR 128-39] The Administrative Record filed by Defendant does not include a copy of the exhibit list that was attached to the December 23, 2014 Amended Notice of Decision, but Plaintiff submitted a copy of that exhibit list with her reply in support of this appeal.[8] [*See* #30-1] The exhibit list attached to the Amended Notice of Decision—which the ALJ explicitly represented to be "the correct exhibit list"—did not include Exhibit 6A but rather identified only Exhibits 1 and 2 under the Part A exhibits. [*Id.*]

Although the exhibit list attached to the Amended Notice of Decision did not include Exhibit 6A [#30-1], the ALJ's decision attached to the Amended Notice of Decision cited to Exhibit 6A and referenced the DMB Opinion [AR 138]. Plaintiff's brief submitted in support of her request for review of that decision argued that the ALJ erred in relying on the DMB Opinion and Exhibit 6A, because "there is no Exhibit 6A," "'DMB, MD' never examined *this* claimant's file," and the ALJ's decision thus "[was] based upon an apparent conflation of two files." [AR 403 (emphasis in original)] The Appeals Council granted the request for review, vacated the ALJ's December 2014 decision, and remanded the matter back to the ALJ on other grounds without addressing Plaintiff's arguments about the ALJ's reliance on the DMB Opinion and Exhibit 6A. [AR 142-43]

---

[8] Defendant has not challenged the authenticity of the exhibit list submitted by Plaintiff and represented to be the exhibit list that was attached to the Amended Notice of Decision. To the extent an authentic copy of the exhibit list attached to the Amended Notice of Decision had not been included in the record, remand would be required. *See Quintana v. Colvin*, No. 14-CV-00930-KLM, 2015 WL 3412331, at *9 (D. Colo. May 28, 2015) ("A court has the authority to remand a case for further consideration if unable to exercise meaningful or informed judicial review because of an inadequate administrative record." (quotation omitted)).

More importantly, after the ALJ issued her December 2014 decision and prior to the June 8, 2016 administrative hearing, the Social Security Administration sent Plaintiff a letter, dated August 31, 2015, stating that Plaintiff's file was ready for review and enclosing a copy of the exhibit list. [AR 407-08] Although the Administrative Record filed by Defendant does not include a copy of the exhibit list that was attached to the August 31, 2015 Letter, Plaintiff submitted a copy of that exhibit list with her reply in support of this appeal.[9] [*See* #30-2] The exhibit list attached to the August 31, 2015 Letter did not include Exhibit 6A but rather identified only Exhibits 1 through 4 under the Part A exhibits. [*Id.*] Plaintiff thus was not placed on notice, prior to the June 8, 2016 hearing, that Exhibit 6A was part of the record that would be considered by the ALJ.

Nor is it clear that Exhibit 6A was among the exhibits admitted into the record by the ALJ at the June 8, 2016 hearing. [AR 1097] In introducing the evidence, the ALJ stated:

> Okay, so at this time I admit the information that we have into evidence. We have additional extensive additional [sic] new evidence since our 2014 hearing. I believe 31F through 38F is new for this hearing, so that is now admitted into evidence.

[*Id.*] The transcript of the June 8, 2016 hearing goes on to state: "Exhibits 1A through 38F, previously identified, were received into evidence and made part of the record." [*Id.*] Neither the ALJ nor the transcript either (1) specifically identify the number of Part A exhibits being introduced or (2) identify where these exhibits were "previously identified." [*Id.*] The ALJ's statements at the hearing and the transcript's identification of the exhibits

---

[9] Defendant has not challenged the authenticity of the exhibit list submitted by Plaintiff and represented to be the exhibit list that was attached to the August 31, 2015 Letter. To the extent an authentic copy of the exhibit list attached to the August 31, 2015 Letter had not been included in the record, remand would be required. *See Quintana*, 2015 WL 3412331, at *9.

thus are entirely consistent with the exhibit list Plaintiff received with the August 31, 2015 Letter, which failed to identify Exhibit 6A as an exhibit that the ALJ would consider as part of the disability determination.

Given that Plaintiff was not provided notice that Exhibit 6A was part of the record either prior to or during the June 8, 2016 hearing, the Court does not find persuasive Defendant's contention that "[i]f Plaintiff believed the ALJ should not have considered [the DMB Opinion], Plaintiff should have raised an objection to the ALJ" at the June 8, 2016 administrative hearing. [#29 at 12-13] Defendant has failed to point to anything in the record that would have placed Plaintiff on notice—prior to or during the June 8, 2016 hearing—that the DMB Opinion contained in Exhibit 6A would be considered by the ALJ in connection with her application. Moreover, after the ALJ issued her 2016 decision denying Plaintiff benefits based, in part, on the DMB Opinion contained in Exhibit 6A, Plaintiff renewed her objection to the Appeals Council that "[t]here is no record authored by State Agency Physician DMB, M.D. and there is no Exhibit 6A." [AR 1116-17]

### 2. Prejudice

Defendant further argues that, even if the DMB Opinion was not properly relied upon by the ALJ, "any error was harmless because [the DMB Opinion] is nearly identical to" another medical opinion in the record of which Plaintiff had notice and access prior to the June 8, 2016 hearing. [#29 at 13] Specifically, Defendant refers to the opinion of "Dr. S" contained in Exhibit 2A, the Disability Determination Explanation for the Commissioner's denial of Plaintiff's DIB claim at "the Initial level." [AR 46-55] Defendant contends that "[l]ike [DMB], Dr. S. opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk six hours in an eight-hour day; and occasionally perform postural activities." [#29 at 13 (citing AR 52-53)]

The ALJ, however, did not rely upon Dr. S's opinion in reaching her conclusion that Plaintiff was not disabled. [*See* AR 26-35] Indeed, for reasons not articulated in the record, the ALJ did not even mention Dr. S's opinion in her decision. Despite this silence, Defendant asks this Court to adopt Dr. S's opinion as a rationalization for the ALJ's decision. The Court is not permitted to do so. As the Tenth Circuit has made clear, this Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Moreover, courts in the Tenth Circuit have found that an applicant is denied due process—and thereby prejudiced—where the ALJ relies upon evidence not made part of the administrative record prior to the administrative hearing. *See, e.g.*, *Yount*, 416 F.3d at 1236 (finding that applicant was denied a full and fair hearing, because "[the applicant's] attorney was not able to rebut the report or to cross-examine the doctor, the vocational expert, or [the applicant] in light of the additional evidence" added to the record after the hearing); *Allison*, 711 F.2d at 147 ("An ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report"); *Blevins v. Colvin*, No. CIV-15-159-SPS, 2016 WL 5408130, at *3 (E.D. Okla. Sept. 28, 2016) (reversing and remanding where ALJ relied upon documents not included in the administrative record until the appeal); *Quintana v. Colvin*, No. 14-CV-00930-KLM, 2015 WL 3412331, at *9 (D. Colo. May 28, 2015) (finding that "Plaintiff's counsel could not meaningfully develop the record" where ALJ relied upon a prior decision of the Commissioner that was not included in the record in advance of the administrative hearing).

Because the ALJ relied upon a medical opinion that was not made part of the record until after the June 8, 2016 hearing, the Court finds that Plaintiff's counsel was precluded from rebutting the DMB Opinion or examining Plaintiff, the vocational expert, and/or DMB in light of that evidence at the hearing.  Plaintiff thus was denied her due process right to a full and fair hearing and the ALJ's decision must be reversed.

### B.    Plaintiff's Request for Remand with an Immediate Award of Benefits

Plaintiff requests that "the Commissioner's finding of not disabled be reversed and the plaintiff [be] awarded benefits, absent a hearing on remand."  [#28 at 46]  In support, Plaintiff argues that "[t]his case has gone to hearing twice and the record is well developed.  In light of that and the significant delays in processing the claim, [P]laintiff asks [the] Court to take the extraordinary step of finding her disabled."  [*Id.*]

"Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose."  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotation omitted).  Here, Plaintiff contends that her procedural due process rights were violated because the ALJ relied upon a medical opinion that was not part of the record at the time of the hearing on her application and thus Plaintiff "[was] not given the opportunity to cross-examine the physician or to rebut the [opinion]."  [#28 at 40 (quoting *Allison*, 711 F.2d at 147)]  Further fact finding thus is necessary to allow Plaintiff the opportunity to rebut the medical opinion upon which the ALJ relied in determining that she was not disabled.  The Court thus declines Plaintiff's request that the Court make a finding that she is entitled to benefits.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Order.


DATED:  April 2, 2019                                    BY THE COURT:

                                                         s/Scott T. Varholak
                                                         United States Magistrate Judge